IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD & ALLISON BROOKMAN, as parents and next friends of A.B., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> REED-CUSTER COMMUNITY UNIT, SCHOOL DISTRICT 255-U; MARK WOLF, individually and as an agent of District 255-U; MIKE MATHIEU, individually and as an agent of District 255-U; BUTCH STAFFORD, individually and as an agent of District 255-U; TIM RICKETTS, individually and as an agent of District 255-U; MICHAEL SMITH, individually and as an agent of District 255-U; and CHUCK ANDERSON, individually and as an agent of District 255-U, <br><br> Defendants. | Case No. 18 C 7836 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Richard and Allison Brookman, parents of minor A.B., have sued Reed-Custer Community Unit School District 255-U ("the District") and several of its employees after A.B. was sexually assaulted during a 2017 summer football camp and bullied after reporting his assault. All defendants have moved to dismiss the complaint under Rule 12(b)(6) and under several theories of immunity. (Dkt. 9.) The motion is granted in part and denied in part.[1]

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Venue is appropriate under 28 U.S.C. § 1391(b).

## BACKGROUND[2]

In Summer 2017, as A.B. was about to begin his first year of high school at Reed-Custer High School ("Reed-Custer"), he attended the Reed-Custer football camp. (*Id.* ¶ 36–38, 40.) Two upperclassmen began harassing A.B., threatening to rape his mother and sister. (*Id.* ¶¶ 42–43.) When A.B. told them to stop, they escalated the threats, telling him they would hold him down and force him to watch. (*Id.* ¶ 44.)

Later that day, the same upperclassmen asked if A.B. "wanted smoke." (*Id.* ¶ 45.) When A.B. replied, "no," one of the upperclassmen grabbed A.B. by the neck and bent him over at the waist while the other attempted to insert his thumb into A.B.'s anus. (*Id.* ¶ 46.) A month later, the two assailants and two more upperclassmen attempted to assault A.B. again, this time in assistant coach Mike Mathieu's presence. (*Id.* ¶ 49.) Though no school employees came to his aid, he was able to escape. (*Id.*) Ten days after that, the same four upperclassmen asked A.B. again if he wanted "smoke." One of the players then slapped A.B. in the face twice and tackled him to the ground. (*Id.* ¶ 52.) A second player, who weighed about 250 pounds, kneeled on A.B.'s chest and pinned his arms to the ground. (*Id.* ¶ 53.) The first player then kicked A.B.'s ribs and torso. (*Id.* ¶ 56.) A third held A.B.'s legs while a fourth pulled A.B.'s shorts down and repeatedly attempted to put a finger into A.B.'s anus. (*Id.* ¶ 57.)

This assault occurred in front of dozens of football players, and A.B. screamed for help throughout, but no Reed-Custer staff came to A.B.'s aid. (*Id.* ¶ 58.)[3] One of the assailants picked A.B. off the ground and forced him to walk past the coaches (head coach Mark Wolf and

---

[2] The facts are taken from the Brookmans' complaint and are presumed true for this motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The defendants repeatedly and inappropriately assert that the allegations are false. The Brookmans might not ultimately prove all their allegations, but a Rule 12(b)(6) motion tests the sufficiency, not the truth of the complaint.

[3] Taking inferences in the Brookmans' favor, the court assumes that coaches were present.

assistant coach Mathieu) to collect his t-shirt and shorts, but the coaches still did not intervene. (*Id.* ¶ 61.) A.B. then collapsed on the ground in tears, in significant pain and having trouble breathing. (*Id.* ¶ 62.) Wolf ordered the team to huddle to end practice and, seeing A.B. on the ground, yelled at him to get up and join the group. (*Id.* ¶ 63.) Another coach—unnamed and not a defendant here—finally asked if A.B. was all right, but one of the assailants told the coach that A.B. was fine and that they were only roughhousing. (*Id.* ¶ 64.) When A.B.'s mother picked A.B. up from camp, she took him immediately to the hospital where he was treated for a bruised sternum and ribs. (*Id.* ¶ 68.)

The Brookmans allege that "giving smoke" was a Reed-Custer football hazing ritual that sometimes took place in the presence of the coaching staff. (*Id.* ¶¶ 19–20, 23.) Shortly after assaulting A.B., the upperclassmen asked coaches Wolf and Mathieu if they "wanted smoke," and the coaches laughed, suggesting that they understood the meaning. (*Id.* ¶ 47.) These assaults also formed part of a broader culture of abuse on the football team; Wolf, for instance, encouraged players during pre-game pep talks to "unleash their inner rapist" and "rip off" their opponents' genitals. (*Id.* ¶ 24.)

The Brookmans also allege that the District, principal Tim Ricketts, and athletic director Chuck Anderson knew or should have known of this abuse. (*Id.* ¶¶ 16, 18, 25.) District policy prohibits hazing, bullying, and assault, and requires employees to report any such behavior. (*Id.* ¶¶ 28–35.) Nonetheless, after Ricketts asked Anderson to investigate the incident, the four assailants received either modest or no discipline. (*Id.* ¶ 76–77.) The football coaches were not disciplined at all, and they took no corrective action to address hazing after these assaults. (*Id.* ¶¶ 78–79.) The school did not contact the local police department or the Illinois Department of Children and Family Services. (*Id.* ¶ 80.) Indeed, when Allison Brookman contacted the police,

Wolf encouraged football players who witnessed the assault to "get their story straight." (*Id.* ¶ 81.)

Other school staff started a campaign to harass and discredit A.B. when the Fall semester started. Butch Stafford, A.B.'s gym and history teacher and a close friend of Wolf's, regularly marked A.B. tardy when he was on time, which resulted in A.B.'s receiving detentions. (*Id.* ¶¶ 84–86.) Stafford once grabbed A.B. by the shirt, brought his arm back as if to punch him, and threatened to give A.B. a black eye. (*Id.* ¶ 85.) Many students threatened A.B. and encouraged him to commit suicide. (*Id.* ¶ 88.) When A.B. reported this bullying to Ricketts and assistant principal Michael Smith, neither would discipline any students. (*Id.* ¶ 89–90.) Despite Ricketts and Smith's assurances to the Brookmans that they would address hazing, they took no action, and A.B. continued to experience bullying and hazing. (*Id.* ¶ 93–96.) A.B. was eventually diagnosed with major depression and post-traumatic stress disorder. (*Id.* ¶ 97.)

The Brookmans, individually and on A.B.'s behalf, sued Reed-Custer and some of its staff, alleging (1) willful and wanton conduct; (2) intentional infliction of emotional distress; (3) § 1983 – denial of substantive due process; (4) § 1983 – denial of equal protection (class of one); and (5) § 1983 – *Monell* claim against the District.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal*, 635 F.3d at 886; *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but

must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. 10, 10, 135 S. Ct. 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." (citation omitted)); *McCauley* v. *City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Swanson* v. *Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)) (applying *Twombly* and *Iqbal* standards to *Monell* claims).

## ANALYSIS

I. **Willful and Wanton Conduct (Count I)**

    A. **Timeliness**

The Brookmans sue "individually and as parents and next friends of [A.B.]" (Dkt. 1 at 18, 20.) Illinois law requires that claims against municipal entities and their employees be filed within one year. 745 Ill. Comp. Stat. 10/8-101(a). But when the claim relates to childhood sexual abuse, *see* 735 Ill. Comp. Stat. 5/13-202.2(b), a twenty-year statute of limitations applies, even when the defendants are municipal entities or employees. *Doe* v. *Hinsdale High Sch. Dist. 86*, 905 N.E.2d 343, 348–49, 388 Ill. App. 3d 995 (2009). The Central District has held that the longer limitations period applies to claims brought on the victim's behalf, but the shorter period applies the victim's parents' individual claims. *Doe ex rel. Doe* v. *White*, 627 F. Supp. 2d 905, 915–17 (C.D. Ill. 2009). The court finds that reasoning persuasive and agrees that "§ 202.2 . . . is

intended to apply only to actions brought by or on behalf of the person abused, not persons claiming derivative injury from the child abuse of someone else." *Id.* at 915. The Brookmans therefore had until July 2018 to file individual claims for A.B.'s sexual assault but did not file until November 2018. Count I is therefore dismissed as to the Brookmans' individual claims.

### B.    Discretionary Immunity

Defendants argue that they are entitled to discretionary immunity under 745 Ill. Comp. Stat. 10/2-201. "[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* This immunizes municipal employees from liability for their discretionary acts, but not ministerial ones. *Malinski* v. *Grayslake Cmty. High Sch. Dist. 127*, 16 N.E.3d 915, 918, 2014 IL App (2d) 130685, ¶ 8. "[D]iscretionary acts are those that are unique to a particular public office, whereas ministerial acts are those that a person performs on a given set of facts, in a prescribed manner, in accordance with a mandate of legal authority, and without reference to the official's discretion as to the propriety of that act." *Id.* (citation omitted). Moreover, to invoke this immunity, the challenged action also must involve policymaking. *Harinek* v. *161 N. Clark St. Ltd. Partners*, 692 N.E.2d 1177, 1181, 181 Ill. 2d 335 (1998). Policymaking entails "those judgments which require the [defendant] to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Id.* (quoting *West* v. *Kirkham*, 588 N.E.2d 1104, 147 Ill. 2d 1 (1992)). Discretionary immunity applies even if the conduct was willful and wanton. *In re Chi. Flood Litig.*, 680 N.E.2d 265, 273, 176 Ill. 2d 179 (1997).

The administrators—Ricketts, Smith, and Anderson—have discretionary immunity from liability in this lawsuit. The Illinois Appellate Court has held uniformly that a school

administrator's response to harassment and bullying is a discretionary, policymaking decision entitled to immunity under Section 2-201. *Malinski*, 16 N.E.3d at 920 ("[H]ow a school official handles an instance of bullying fits within the definition of a discretionary act."); *Hascall* v. *Williams*, 996 N.E.2d 1168, 1176, 2013 IL App (4th) 121131, ¶ 29 (2013); *Albers* v. *Breen*, 806 N.E.2d 667, 674, 346 Ill. App. 3d 799 (2004) ("Certainly the way that a principal handles an instance of bullying in his school falls within the definition" of a discretionary act). In those cases, the Appellate Court rebuffed the argument that a school's anti-bullying policy takes all discretion out of the administrators' hands and makes responding to bullying a mere ministerial act. *E.g.*, *Malinski*, 16 N.E.3d at 919 ("[W]e reject plaintiff's argument that the act of 'carrying out' an anti-bullying policy is a ministerial act . . . ."); *Hascall*, 996 N.E.2d at 117 (finding school policy "does not mandate a particular response to a specific set of circumstances"). The Illinois Supreme Court likely would agree with the unanimous decisions of the Illinois Appellate Court. *See Cmty. Bank of Trenton* v. *Schnuck Markets, Inc.*, 887 F.3d 803, 811 (7th Cir. 2018) (federal court must predict how state's highest court would answer state-law question).

Under these authorities, the administrators are entitled to immunity from liability for discretionary decisions about how severely to punish A.B.'s assailants and bullies. As in *Malinski*, *Hascall*, and *Albers*, investigating assault and bullying and choosing appropriate discipline was a discretionary act that required the administrators to weigh competing considerations, such as the deterrence value of suspensions or expulsions versus the assailants' and bullies' educational need to remain in class. The District's anti-bullying policy left wide discretion about how to discipline bullies. It did not even require discipline, let alone discipline of a set kind or severity. (Dkt. 9-1 at 3 ("The Superintendent or designee shall use interventions to address bullying, which may include, but are not limited to, school social work services,

7

restorative measures, social-emotional skill building, counseling, school psychological services, and community-based services.").)

The Brookmans respond that all defendants had a ministerial duty to report child abuse under the Illinois Abused and Neglected Child Reporting Act, 325 Ill. Comp. Stat. 5/1 *et seq.* But that Act's mandatory reporting does not apply to student-on-student violence. 325 Ill. Comp. Stat. 5/4 (requiring teachers to report reasonable suspicion that child is an "abused child"); 325 Ill. Comp. Stat. 5/3 (defining "abused child" as child abused by parents, guardians, etc.).

Unlike the administrators, Wolf, Mathieu, and Stafford are not entitled to discretionary immunity. The Brookmans accuse Wolf and Mathieu of standing by while A.B.'s teammates sexually assaulted him. The court can reasonably infer from the complaint that Wolf and Mathieu were not only aware of the "smoke" ritual but also present during the sexual assault and one of the attempted assaults. A teacher need not weigh competing interests before stopping students from sexually assaulting another student in the teacher's presence. Though perhaps the mode of intervention is discretionary, the need to intervene is not. Similarly, the complaint accuses Stafford of threatening to punch A.B., which is not a discretionary or policymaking decision.

C. *In Loco Parentis* and Supervisory Immunity

Under Illinois law, "neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 Ill. Comp. Stat. Ann. 10/3-108(a). Similarly, because teachers stand in the relationship of parents to their students, they are entitled to *in loco parentis* immunity for their disciplinary decisions during school activities. 105 Ill. Comp. Stat. 5/24-24;

*Hopwood* v. *Elmwood Cmty. High Sch. Dist. 322*, 525 N.E.2d 247, 248, 171 Ill. App. 3d 280 (1988). Like supervisory immunity, *in loco parentis* immunity does not apply to willful and wanton conduct. *Id.* at 248–49.

The defendants are therefore entitled to both immunities unless the Brookmans can show willful and wanton conduct. The Illinois Local Governmental and Governmental Employees Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others . . . ." 745 Ill. Comp. Stat. 10/1-210. "Generally, whether conduct was willful and wanton is a question of fact . . . ." *Mitchell* v. *Special Educ. Joint Agreement Sch. Dist. No. 208*, 897 N.E.2d 352, 357, 386 Ill. App. 3d 106 (2008).

Taken as true and viewing the facts in the light most favorable to the Brookmans, the complaint plausibly alleges that Wolf, Mathieu, and Stafford engaged in willful and wanton conduct. The Brookmans allege that a group of football players twice attempted to sexually assault A.B., once in Mathieu's presence. (Dkt. 1 ¶ 49.) A third time, the players pinned A.B. to the ground, kicked his ribs and torso, and put a finger into his anus. (*Id.* ¶¶ 51–57.) While A.B. screamed in pain, the nearby coaches did nothing. (*Id.* ¶¶ 58–59.) To the contrary, when the assault ended, Wolf chastised A.B. for not coming to the huddle. (*Id.* ¶¶ 62–63.) Defendants respond that Wolf and Mathieu at most negligently supervised football practice. But taking reasonable inferences in the Brookmans' favor, the court can infer that Wolf and Mathieu were present for the assaults yet did not intervene, which goes beyond poor supervision and displays indifference to A.B.'s safety.

The Brookmans allege that Stafford participated in a campaign to harass A.B. in retaliation for A.B.'s speaking up about the incident, even threatening to punch A.B. (*Id.* ¶¶ 82–

85.) These allegations plausibly suggest that Stafford intended to harm A.B., enough to establish willful and wanton conduct. Citing *Wallace ex rel. Wallace* v. *Batavia School District 101*, 68 F.3d 1010, 1016 (7th Cir. 1995), and *Moore* v. *Board of Education of City of Chicago*, 300 F. Supp. 2d 641 (N.D. Ill. 2004), defendants argue that Stafford's actions reflect attempts to maintain order and discipline in the classroom. Neither case supports the defendants' position. In *Wallace*, the Seventh Circuit held that a teacher did not violate the Fourth Amendment when he grabbed a student's wrist to lead her out of the classroom away from a fight that was about to turn physical. *Id.* at 1015. Here, the Brookmans allege that Stafford "grabb[ed] [A.B.] by the shirt, clench[ed] his fist, cock[ed] his arm back and threaten[ed] to give A.B. a black eye." (Dkt. 1 ¶ 85.) The former maintains classroom order; the latter is assault.

*Moore* helps Stafford even less. There, a teacher repeatedly mocked the plaintiff's racial heritage before putting him in a headlock that sent him to the hospital. 300 F. Supp. 2d at 642–43. Far from holding that the teacher engaged in proper discipline, *Moore* held that the school board and principals were not liable because they neither knew in advance that the teacher would batter the plaintiff nor maintained a custom or practice of racial discrimination or teacher-on-student abuse. *Id.* at 645–46. The court did not hold that the teacher appropriately disciplined the plaintiff; tellingly, the teacher did not join the board's motion to dismiss. *Id.* at 642 n.1.

### D. District's Liability

The District cannot be held liable under Illinois law if its employees are not liable. 745 Ill. Comp. Stat. 10/2-109. Similarly, it is immune from suit over its employees' discretionary decisions. *Arteman* v. *Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 762–63, 198 Ill. 2d 475 (2002). The District is therefore not liable for the alleged conduct of Ricketts, Smith, and Anderson.

Count I is dismissed as to Ricketts, Smith, and Anderson. The motion to dismiss is denied as to Wolf, Mathieu, Stafford, and the District (as limited above).

II.     **Intentional Infliction of Emotional Distress (IIED) (Count II)**[4]

Count II alleges that all defendants intentionally inflicted emotional distress on A.B. At the outset, for the same reasons as count I, A.B.'s claim is timely, but the Brookmans' individual claims are dismissed as untimely. And because Count II challenges the same conduct as Count I, Ricketts, Smith, and Anderson are immune from liability, but Wolf, Mathieu, and Stafford are not.

To state a claim for IIED against Wolf, Mathieu, or Stafford, the Brookmans must plausibly allege that (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress. *S.J.* v. *Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010). Because A.B. was diagnosed with major depression and post-traumatic stress disorder from his experiences at Reed-Custer (dkt. 1 ¶ 97), the defendants do not dispute the third element.

The outrageousness standard is demanding, and to qualify, a defendant's conduct must "be so extreme as to go beyond all possible bounds of decency." *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 83, 207 Ill. 2d 263 (2003). But "the more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when

---

[4] The Brookmans respond to the motion to dismiss that they have stated a claim for negligent infliction of emotional distress (NIED). The Brookmans styled Count II "Intentional Infliction of Emotional Distress" and pleaded in terms unique to that action. NIED is a species of ordinary negligence, for which the Brookmans must plead duty, breach, causation, and damages, *see, e.g.*, *Schweihs* v. *Chase Home Finance, LLC*, 77 N.E.3d 50, 58, 2016 IL 120041, ¶ 31, terms they do not reference or demonstrate in this count. The court does not treat Count II as a NIED claim.

11

the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *Wordlow* v. *Chi. Bd. of Educ.*, No. 16 C 8040, 2018 WL 6171792, at *13 (N.D. Ill. Nov. 26, 2018) (quoting *Honaker* v. *Smith*, 256 F.3d 477, 491 (7th Cir. 2001)).

The complaint plausibly alleges that Wolf and Mathieu acted extremely or outrageously. Taking the facts in the light most favorable to the Brookmans, the complaint could be read to imply that Wolf and Mathieu, by failing to intervene, permitted other players to sexually assault A.B. in their presence. Stafford grabbed and threatened to punch A.B. in a classroom in retaliation for A.B.'s reporting a sexual assault. Stafford held power over A.B. and allegedly exercised that power to send A.B. to unwarranted detentions and threaten his physical safety. This alleged conduct, if true, was "so extreme as to go beyond all possible bounds of decency, and utterly intolerable in a civilized community." *Wordlow*, 2018 WL 6171792, at *13.

Count II is therefore dismissed as to Ricketts, Smith, and Anderson. The motion to dismiss is denied as to Wolf, Mathieu, and Stafford.

### III. Due Process (Count III)

"[T]he Due Process Clause of the Fourteenth Amendment generally does not impose upon the state a duty to protect individuals from harm by private actors." *King el rel. King* v. *E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007). This rule has two exceptions: First, the "special relationship" exception requires the state to protect individuals who cannot protect themselves because of the state's custody. *Id.* (citing *DeShaney* v. *Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 199–200, 109 S. Ct. 998 (1989)). States do not maintain such a relationship with public-school students, and the Brookmans do not argue it here. *J.O.* v. *Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267 (7th Cir. 1990).

Second, the "state-created danger" exception requires the state to protect against dangers it has created or exacerbated. *King*, 496 F.3d at 817 (citing *Monfils* v. *Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)). To prove a state-created danger, the Brookmans must show (1) "the state, by its affirmative acts, create[d] or increase[d] a danger"; (2) "the failure on the part of the state to protect an individual from such danger [is] the proximate cause of the injury to the individual"; and (3) "the state's failure to protect the individual must shock the conscience." *Id.* at 818 (citations omitted). Negligent or even grossly negligent conduct does not shock the conscience in the constitutional sense. *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962 (7th Cir. 1998).

The Brookmans plausibly allege that Stafford took affirmative actions that may make him liable for a Due Process violation. Stafford allegedly marked A.B. tardy to punish him for speaking up and even physically assaulted him, grabbing his shirt and posing as if to punch him, which exceeds gross negligence. (*Id.* ¶¶ 84–86.) Because Stafford allegedly participated in creating or worsening some of the dangers that produced A.B.'s injuries, the Brookmans state a claim for a Due Process violation against him. *See Eilenfeldt* v. *United C.U.S.D. #304 Bd. of Educ.*, 30 F. Supp. 3d 780, 790 (C.D. Ill. 2014) (holding plaintiff stated Due Process claim for teachers' active involvement in bullying of son through "disciplinary decisions and the participation . . . in [victim]'s bullying"); *Fonza* v. *Chi. Pub. Sch. Dist. #299*, No. 17 C 3571, 2018 WL 337811, at *6 (N.D. Ill. Jan. 9, 2018) (holding plaintiff stated claim where school staff saw that girl suffered physical injury and placed her in hallway without supervision or medical attention).

The Brookmans also allege that Wolf took some affirmative acts to cultivate an atmosphere of sexual violence, encouraging players during pre-game pep talks to "unleash their

13

inner rapist" and "rip off" their opponents' genitals. (Dkt. 1 ¶ 24.) This alleged language was abhorrent but too remote from the harm A.B. suffered to satisfy the proximate causation element. *See King*, 496 F.3d at 818.

As to all other defendants (and all other allegations against Wolf and Stafford), the Brookmans allege failure to supervise, intervene, and discipline, which do not state a claim under the Due Process Clause. The complaint principally challenges the Reed-Custer staff's failure to stamp out the "smoke" hazing ritual, stop A.B.'s assaults, or prevent retaliatory bullying. But failure to intervene, even an egregious failure like the one alleged here, maintains rather than increases the risk of private violence and thus does not violate the Due Process clause. *See, e.g.*, *Doe* v. *Village of Arlington Heights*, 782 F.3d 911, 912, 918 (7th Cir. 2015) (holding police officer did not violate Due Process by failing to prevent rape despite seeing men carrying unconscious girl and failing to intervene). Thus, courts have held routinely that a school's failure to prevent student-on-student harassment, assault, and bullying is not a state-created danger. *See, e.g.*, *D.S.* v. *E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798–99 (7th Cir. 2015) (finding "inaction or ineffective response to . . . bullying" did not constitute state-created danger); *Doe* v. *Evergreen Park Elementary Sch. Dist. 124*, No. , 2017 WL 6731867, at *6–7 (N.D. Ill. Dec. 29, 2017) (same); *Doe* v. *Riverside-Brookfield Township High Sch. Dist. 208*, No. 95 C 2437, 1995 WL 680749, at *5–6 (N.D. Ill. 1995) (same); *see also, e.g.*, *Morgan* v. *Town of Lexington, Mass.*, 823 F.3d 737, 744 (1st Cir. 2016) ("An alleged failure of the school to be effective in stopping bullying by other students is not action by the state to create or increase the danger."); *Morrow* v. *Balaski*, 719 F.3d 160, 177–79 (3d Cir. 2013) (holding choice to suspend rather than expel bully did not constitute state-created danger). In this case, as in those, because the failure to intervene

14

left A.B. in as much danger from private harm as if no state actors had been involved, he does not state a claim under the Due Process clause.

Count III is dismissed as to all defendants except Stafford. Due Process claims against him are limited to his affirmative actions, not his failure to intervene on A.B.'s behalf.

## II. Equal Protection (Count IV)

The Brookmans next allege that A.B. was denied equal protection under a "class of one" theory. The Equal Protection Clause, though "most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions . . . also . . . protect[s] individuals against purely arbitrary government classifications." *Geinosky* v. *City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Courts have therefore "recognized equal protection claims brought by a 'class of one,' although [they have] acknowledged that it is difficult to succeed with such a claim." *McDonald* v. *Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). "A class of one equal protection claim may be brought where (1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *Id.* In *Geinosky*, for instance, one police officer gave the plaintiff twenty-four fabricated parking tickets over a few months. 675 F.3d at 745. The Seventh Circuit held that the plaintiff stated a claim for a class-of-one Equal Protection violation because the bizarre and repeated tickets "clearly suggest harassment by public officials that has no conceivable legitimate purpose." *Id.* at 748.

As in *Geinosky*, the complaint here alleges a pattern of arbitrary punishments. The Brookmans allege that Stafford gave A.B. bogus tardy slips, removed him from class without

15

reason, and physically assaulted him. (*Id.* ¶¶ 84–85.) Although they identify no comparators, there is no conceivable legitimate purpose to "routinely" mark a punctual student tardy and threaten to punch that student. Moreover, Stafford was Wolf's friend, which, taking inferences in the Brookmans' favor, could mean that Stafford retaliated against A.B. for speaking out against the football program. (*Id.* ¶ 86.) The defendants insist that Stafford's actions constitute routine classroom discipline, but this ignores the Brookmans' well-pleaded allegation that A.B. did nothing to merit discipline. Taking their allegations as true, Stafford marked A.B. tardy for being on time to class and threatened A.B. with physical violence for reporting a sexual assault.

But as with the Due Process claim, Stafford stands alone. The Brookmans do not plausibly claim that any other defendants treated A.B. differently from other students. To begin, the Brookmans do not claim that the District or its employees singled out A.B. to withhold protection from sexual assault that they afforded to other students. The Brookmans do not claim, for instance, that Wolf and Mathieu protected other players from the "smoke" ritual but not A.B. To the contrary, the Brookmans assert that the Reed-Custer football staff turned a blind eye to that type of assault generally. (Dkt. 1 ¶¶ 22–23.) Nor do the Brookmans claim that the District or its staff protected all students but A.B. from bullying and harassment. The complaint lacks facts sufficient to infer that principal Ricketts or vice principal Smith punished harshly all bullies except A.B.'s bullies. Unlike the claims against Stafford, the claims against the remaining defendants do not inherently demonstrate discrimination, and the court cannot reasonably infer either that A.B. was treated differently or that his treatment was irrational.

Count IV is dismissed without prejudice as to all defendants but Stafford.

## V. *Monell* Claim (Count V)

A municipal entity like the District is not liable under § 1983 simply because it employs a tortfeasor; it must independently take some action to cause the defendant's constitutional injuries. *Wilson* v. *Cook Cty.*, 742 F.3d 775, 779 (7th Cir. 2014). "The critical question under *Monell* . . . is whether a municipal . . . policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson* v. *Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). To hold the District liable under *Monell*, the Brookmans must therefore plausibly allege that A.B. suffered a constitutional injury caused by the District's (1) express policy, (2) custom or practice, or (3) official policymaker. *Thomas* v. *Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). The Brookmans must also show that the "governmental custom . . . not only causes but is the moving force behind the deprivation of constitutional rights." *Wilson*, 742 F.3d at 779.

The Brookmans do not allege any District custom, practice, or policy for teachers to bully, harass, or threaten students. In fact, they allege precisely the opposite, claiming that Stafford violated District policy. (Dkt. 1 ¶¶ 168–69.) The remaining *Monell* allegations speak to supervision and reporting policies. Because those policies, if any, did not contribute to any constitutional violations, *supra* Sections III–IV, they are not actionable under *Monell*. *City of Los Angeles* v. *Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986) (per curiam) (holding municipal entity not liable under *Monell* if no underlying constitutional violation occurred). Although in some circumstances, a municipality may be liable for constitutional injuries even if its agents are not, *see Thomas* v. *Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010), here the claims—except Stafford's harassment—are not constitutional in nature and therefore no one can be liable for them under § 1983.

17

Count V is dismissed without prejudice.

## ORDER

The Brookmans' claims on their own behalf are dismissed with prejudice. All counts against Ricketts, Smith, and Anderson are dismissed with prejudice. Counts III and IV are dismissed against Wolf and Mathieu without prejudice. Count V is dismissed without prejudice. The motion to dismiss is denied as to all remaining claims.

Date: September 27, 2019

_____
U.S. District Judge Joan H. Lefkow